IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Karla K. G. | CV 20-4-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.

## I.    Procedural Background

Plaintiff filed an application for disability insurance benefits on August 26, 2015, alleging disability since June 12, 2015 based on physical and mental impairments. (Doc. 28, 203-211). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 28, at 75-107; 17-35). The Appeals Council denied Plaintiff's request for review, thereby

1

making the ALJ's decision dated November 15, 2018, the agency's final decision for purposes of judicial review. (Doc. 28, at 5-10). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which

exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## B.     Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a

claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.  <u>Discussion</u>

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. The ALJ further found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of June 12, 2015. (Doc. 10 at 23.)

At step two, the ALJ found that Plaintiff has the following severe impairments: organic brain syndrome, chronic obstructive pulmonary disorder ("COPD") and obesity. (Doc. 28, at 19).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 28, at 22).

At step four, the ALJ found that Plaintiff had the residual functional capacity to:

> Perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant is able to lift, carry, push and pull up to ten pounds frequently and up to twenty pounds occasionally; she is able to stand and/or walk about two hours over the course of an average eight-hour workday; and she can sit about six hours in an average eight-hour workday. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She cannot climb ladders, ropes, or scaffolds. She can frequently reach overhead bilaterally. She must avoid concentrated exposure to temperature extremes and noise levels greater than 3 out of 5 as described by the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations. She must also avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery, and fumes, odors, dust, gases and areas of poor ventilation. She is able to understand, remember, carry out and maintain attention, concentration and pace for such work activities over an eight-hour workday and forty-hour workweek.

(Doc. 28 at 24.)

Based on this residual functional capacity, the ALJ found that Plaintiff could

perform her past relevant work as an eligibility worker. (Doc. 28 at 33).

Alternatively, at step five, the ALJ found based on the vocational expert's

testimony that there were other jobs existing in significant numbers in the national

economy that Plaintiff could have performed, including sedentary semi-skilled

work as registration clerk, identification clerk, and rehab clerk. (Doc. 28 at 34).

Thus, the ALJ found that Plaintiff was not disabled. (Doc. 28 at 34).

On appeal, Plaintiff does not challenge the ALJ's assessment of her physical

residual functional capacity. Plaintiff focuses exclusively on the ALJ's assessment

of her mental limitations, and raises three issues on appeal. First, Plaintiff

maintains the ALJ erred at step three because she failed to discuss the

psychological medical opinions and Plaintiff's statements when evaluating whether

Plaintiff's mental impairments satisfied Listing 12.02 for neurocognitive disorders.

Second, Plaintiff argues the ALJ failed to account for her own findings of

moderate limitations with concentration, persistence, or pace in the residual

functional capacity. Third, Plaintiff argues the ALJ failed to adequately consider

the psychological medical opinions in the residual functional capacity assessment.

### A.    Listing 12.02

At step three, the ALJ must assess whether the claimant has an impairment

or combination of impairments that meets or equals an impairment listed in 20

C.F.R. Pt. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990).

To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404. 1526(a). The burden at step three remains with the claimant, who must present medical evidence that her impairments meet or medically equal all of the criteria of a listed impairment. See *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). However, the Ninth Circuit does not require that the ALJ discuss evidence in a particular section of the written decision. See *Lewis*, 236 F.3d at 513. Thus, if the ALJ fails to make detailed findings at step three, the court will not reverse provided the ALJ adequately discusses the evidence and makes sufficiently detailed findings in other portions of the decision. See e.g. *Kruchek v. Barnhart*, 125 Fed. Appx. 825, 827

(9th Cir. 2005) (upholding the ALJ's step three determination where he adequately analyzed the evidence in the rationale section of the decision); *Harris v. Astrue*, 2009 WL 801347, at *7 (N.D. Cal. Mar. 25, 2009) (the ALJ's evaluation of the evidence at step four supported the ALJ's step three determination).

Here, the ALJ considered whether Plaintiff's impairments met or equaled the criteria of Listing 12.02 for neurocognitive disorders, which requires medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas: complex attention, executive function, learning and memory, language, perceptual-motor, or social cognition, along with evidence that satisfies the criteria of paragraph B or paragraph C. Paragraph B requires extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself. Alternatively, paragraph C requires evidence of a "serious and persistent" mental disorder and evidence of both: medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and marginal adjustment, that is, minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life. 20 C.F.R.

pt. 404, subpt. P., app 1, ¶ 12.02.

The ALJ found that Plaintiff did not satisfy the paragraph B criteria because she had only moderate limitations in concentrating, persisting, or maintaining pace, and no limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing herself. (Doc. 28 at 23). The ALJ further found that Plaintiff did not satisfy the alternative paragraph C criteria because the record did not establish that she had only marginal adjustment as described in the listing. (Doc. 28, at 23-24).

Plaintiff does not challenge the ALJ's conclusion that she does not satisfy the paragraph C criteria. With respect to the paragraph B criteria, however, Plaintiff argues the ALJ's analysis was insufficient because she failed to consider the psychological medical opinion evidence when evaluating the four areas of mental functioning. In particular, Plaintiff notes that when assessing the area of understanding, remembering or applying information, the ALJ stated that although consultative examiner Dr. Anna Chacko referred to memory loss, "no memory deficits have been independently observed in the records provided for review. Moreover, Dr. Chacko did not administer any specific cognitive tests to measure the claimant's memory function and no other providers of record have noted any memory loss that would impact employability." (Doc. 28, at 22; 474-478). Plaintiff

10

argues the ALJ overlooked the fact that examining psychiatrist Dr. Mark Mozer performed memory testing in November 2016, and found her scores were "on average, a little over 1 standard deviation below the mean, roughly, 10th percentile." (Doc. 28, at 483). Dr. Mozer indicated that Plaintiff was "a questionable candidate for gainful activity, even something scaled-down and simple." (Doc. 28, at 483).

As discussed below, however, the ALJ addressed Dr. Mozer's November 2016 opinion later in the sequential evaluation process, when evaluating Plaintiff's residual functional capacity. (Doc. 28, at 30). Also as discussed below, to the extent Dr. Mozer found that Plaintiff was "a questionable candidate for gainful activity," the ALJ provided specific and legitimate reasons for discounting his opinion. Furthermore, while it is true that the ALJ did not discuss the results of Dr. Mozer's memory testing at step three, there is no indication that those findings establish marked or extreme limitations in any of the four functional areas identified in paragraph B. To the contrary, state agency psychiatrist Dr. Robert Campion found based on his review of Dr. Mozer's opinion that Plaintiff had no more than moderate limitations. (Doc. 28 at 108-109).

Plaintiff also contends the ALJ failed to discuss Dr. Campion's opinion at step three. Because Dr. Campion assessed only moderate mental limitations,

11

however, his opinion does not support a finding that the paragraph B criteria of Listing 12.02 are satisfied. Thus, any error on the ALJ's part in failing to consider Dr. Campion's opinion at step three is harmless.

Plaintiff next argues the ALJ relied on a selective recitation of Plaintiff's activities in finding that she had no limitation in understanding, remembering, or applying information. Specifically, Plaintiff maintains the ALJ's statement that she "demonstrates the ability to understand and learn new information as evidenced by her ability to learn new job functions during the retraining period following her motorcycle accident" is not factually accurate. (Doc. 28 at 22). Plaintiff sustained head injuries in a motorcycle accident in 2007. Plaintiff testified that when she returned to her job as an eligibility worker with the State Office of Public Assistance following the accident, she was retrained and allowed accommodations, such as taking extensive notes to aid her memory and keeping her office door closed to block out noises and distractions. (Doc. 28, at 29, 61). Plaintiff testified that when her job duties were changed several years later, she was not able to adapt to the open office environment and so decided to retire in June 2015. (Doc. 28 at 61-62). Plaintiff has reported that she uses a pill container to remember to take her medications, she no longer cooks because she gets distracted by the computer or television, she used to be an avid reader but now has difficulty following the story,

12

and she no longer has a photographic memory. (Doc. 28, at 265-267).

To the extent Plaintiff argues these statements demonstrate that she satisfies the B criteria and the ALJ erred by not taking them into account, Plaintiff's argument is misplaced. The ALJ reasonably relied on Plaintiff's testimony that she continued working in a skilled position for several years after her accident, and engaged in other activities like managing financial transactions and paying her bills, in finding that Plaintiff's cognitive impairment was not of listing-level severity. (Doc. 28, at 22). The Court also notes that the ALJ considered Plaintiff's subjective testimony later in the sequential evaluation process, but found her statement about the limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (Doc. 28 at 9-10). Plaintiff does not challenge the ALJ's evaluation of her subjective symptom testimony or argue that the ALJ did not provide sufficiently clearly and convincing reasons for discounting her testimony.

For the reasons set forth above, and because Plaintiff does not point to any medical opinions establishing that her mental impairments result in marked or extreme limitations in any of the functional areas described in paragraph B, the Court finds that the ALJ's step-three finding is supported by substantial evidence.

**B.      Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the psychological medical source opinions provided by Dr. Mozer and Dr. Campion. She argues both opinions establish far greater mental limitations than those set forth in the residual functional capacity. She argues the ALJ did not provide sufficient reasons for rejecting Dr. Mozer's opinion, and erred by failing to address Dr. Campion's opinion. The Commissioner counters that the ALJ properly discounted Dr. Mozer's opinion, and maintains that the ALJ's failure to address Dr. Campion's opinion was harmless error.

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

14

To discount the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester,* 81 F.3d at 830. To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The administrative record in this case contains conflicting opinions from the examining and non-examining sources regarding Plaintiff's mental functioning during the relevant period. Non-examining source Dr. Marsha McFarland reviewed the record in February 2016 and found no significant mental limitations. (Doc. 28, at 85-86). In contrast, Dr. Campion determined based on his review of the record in September and November 2016, including Dr. Mozer's opinion, that Plaintiff had moderate limitations in some areas of mental functioning. (Doc. 28, at 107-109). Given these conflicting opinions, the ALJ was required to give specific and legitimate reasons for discrediting one opinion in favor of another.

      1.    <u>Dr. Mozer</u>

Dr. Mozer examined Plaintiff in September 2016 to evaluate her mental status. (Doc. 28 at 469). Dr. Mozer noted that Plaintiff "indicat[ed] residual difficulty from a traumatic brain injury, sustained in a motorcycle accident nine years ago." (Doc. 28, at 469). Dr. Mozer found it significant that Plaintiff returned to work after her accident, but noted that she said her employer "made allowances and her performance was somewhat marginal." (Doc. 28, at 471. Dr. Mozer observed that Plaintiff's speech seemed labored, and she claimed memory difficulties. (Doc. 28, at 471). Based on his initial examination, Dr. Mozer diagnosed a mild neurocognitive disorder, and thought that additional testing would allow him to better evaluate the extent of her memory difficulties. (Doc. 28, at 467). Dr. Mozer found that Plaintiff's "history might suggest that she may be capable of gainful activity, at least something simple and solitary, but it seems clear that, overall, she is a marginal candidate for gainful activity." (Doc. 28, at 471).

Approximately two months later, in November 2016, Plaintiff returned to Dr. Mozer for memory testing. (Doc. 28, at 483). Plaintiff scored in the tenth percentile, which confirmed Dr. Mozer's former diagnostic impression. (Doc. 28, at 483). Dr. Mozer found that the test results confirmed "the impression of trauma-related cognitive difficulties in [Plaintiff's] last job" and reaffirmed his prior

16

impression that Plaintiff was "a questionable candidate for gainful activity, even something scaled-down and simple." (Doc. 28, at 483).

The ALJ considered Dr. Mozer's opinion, but rejected his conclusion that Plaintiff was a marginal candidate for employment because it was not supported with "sufficient observed clinical findings," and was not consistent with her reports concerning her activities and abilities. (Doc. 28, at 30). The ALJ noted that Dr. Mozer "did not address the fact that Plaintiff was able to learn a new job upon her return to work following the accident and she reported no difficulty learning or remembering her new job duties, or carrying them out." (Doc. 28, at 49). The ALJ remarked that Dr. Mozer did not address the fact that Plaintiff had "received no treatment whatsoever for her traumatic brain injury during the period at issue, and worked for many years following her accident, retiring only after management made changes to her job and work environment." (Doc. 28, at 30). Plaintiff testified that when she returned to work after her accident, she was retrained and returned to the job that she had performed for the prior twenty years. (Doc. 28, 49).

Contrary to the ALJ's statement that Plaintiff reported no difficulty learning or remembering her new job duties, Plaintiff testified at the administrative hearing that she did have some difficulties carrying out her job duties. She testified that she

took notes to aid her memory, took breaks between clients, and kept her office door closed to block out noise and distractions and create a quiet environment. (Doc. 28, at 49).

Nevertheless, the record reflects that Plaintiff successfully retrained after her accident and continued to work full-time in her position as an eligibility worker with the State Office of Public Assistance for another eight years. The vocational expert testified that, even with the ability to take notes and take a few minutes between clients, Plaintiff's past relevant work was that of an eligibility worker, which has an SVP of 6 and is thus considered a skilled position. (Doc. 28, at 68-71). The ALJ reasonably found the fact that Plaintiff worked full-time in a skilled position for eight years after she sustained her head injury was not consistent with Dr. Mozer's opinion that Plaintiff was a questionable candidate for gainful activity. Accordingly, the Court finds the ALJ provided specific and legitimate reasons for giving little weight to Dr. Mozer's opinion.

> 2.    Dr. Campion

On September 29, 2016, non-examining state agency psychological consultant Dr. Campion reviewed the record at the reconsideration level. (Doc. 28, at 100). Dr. Campion recognized that as part of the reconsideration process, Dr. Mozer had performed a consultative mental status examination in September 20,

2016. (Doc. 28, at 100). Dr. Campion noted that Dr. Mozer made a provisional diagnosis of mild cognitive disorder but wanted to see Plaintiff again for memory testing. Dr. Campion stated that until Dr. Mozer's memory testing was complete, the record was insufficient. (Doc. 28, at 100).

Dr. Campion supplemented his opinion on November 21, 2016, after receiving the results of Dr. Mozer's memory testing. (Doc. 28, at 109). Dr. Campion noted that, according to Dr. Mozer, Plaintiff placed in roughly the 10th percentile and was a questionable candidate for gainful activity. (Doc. 28, at 109). Based on Dr. Mozer's findings, Dr. Campion found that Plaintiff had moderate limitations in understanding, remembering, and carrying out detailed instructions, and moderate limitations in maintaining concentration and persistence. (Doc. 28, at 108). In light of Dr. Mozer's opinion, Dr. Campion found "the evidence supports the claimant has limited but adequate cognitive ability to perform routine, repetitive tasks. She was, after all, able to continue working as a manager for a state agency for eight years after her reported traumatic brain injury." (Doc. 28, at 109). Dr. Campion further found "[t]he evidence likewise supports that she would be able interact with others and adapt to normal changes in a simple work environment." (Doc. 28, at 109).

The ALJ referred to Dr. Campion's opinion twice in her decision, but

mistakenly stated that Dr. Campion assessed no mental limitations. (Doc. 28, at 32). The Commissioner concedes the ALJ erred by not addressing Dr. Campion's opinion, but takes the position that the error was harmless. The Commissioner notes that Dr. Campion cited Dr. Mozer's opinion as a significant source and waited for Dr. Mozer's opinion before completing his own assessment of Plaintiff's mental limitations. Because the ALJ provided sufficient reasons for discounting Dr. Mozer's opinion, the Commissioner argues, those reasons apply equally to Dr. Campion's opinion and the ALJ's failure specifically address Dr. Campion's opinion was harmless error.

The Ninth Circuit has said that an ALJ's failure to address a medical opinion may be reviewed for harmless error and there is no "rigid rule" for purposes of determining whether such error is harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). However, the Ninth Circuit stated "that where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to harmless. In other words, the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Marsh*, 792 F.3d at 1173.

Here, the ALJ completely failed to consider Dr. Campion's opinion, including his assessment that Plaintiff had moderate limitations in understanding,

remembering, and carrying out detailed instructions; moderate limitations in maintaining concentration and persistence; and limited but adequate cognitive ability to perform routine, repetitive tasks. (Doc. 28, at 108). While the ALJ provided sufficient reasons for discounting Dr. Mozer's opinion to the extent he found Plaintiff was a questionable candidate for gainful activity, she agreed that his test results showed some memory and speech deficits and did not reject that aspect of his opinion. (Doc. 28, at 32). Dr. Campion, in turn, found after reviewing the entire record, including Dr. Mozer's memory test results, that Plaintiff had moderate limitations in understanding, remembering, and carrying out detailed instructions; moderate limitations in maintaining concentration and persistence; and had the cognitive ability to perform routine, repetitive tasks. (Doc. 28, at 108).

While the Commissioner may well be correct, that the reasons cited by the ALJ for discounting Dr. Mozer's opinion would also provide a basis for discounting Dr. Campion's, the Court is "constrained to review the reasons the ALJ asserts" and should not engage in an independent analysis of the medical opinion evidence. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). In conducting the harmless error analysis, the Court cannot make its own independent findings or "affirm the agency on a ground that the agency did not invoke in making its decision." *Stout v. Commissioner of Social Security*, 454 F.3d 1050,

21

1054 (9th Cir. 2006). Thus, this Court may not undertake to identify reasons that could have been advanced by the ALJ for rejecting Dr. Campion's opinion, but were not.

Plaintiff's past relevant work has a specific vocational preparation code (SVP) of 6[1] and is thus considered a skilled position. In addition, the vocational expert testified that an individual limited to unskilled work would not be able to perform the semi-skilled alternative jobs identified by the ALJ at step-five. (Doc. 28, at 76). Thus, the Court cannot say with confidence that no reasonable ALJ, when fully crediting Dr. Campion's opinion as to Plaintiff's mental limitations, could have reached a different disability determination. See *Stout,* 454 F.3d at 1056 (a court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting that [evidence], could have reached a different disability determination"). Consequently, the ALJ's failure to incorporate the limitations identified in Dr. Campion's opinion or properly reject it cannot be viewed as harmless and this case must be remanded.

## C.     Moderate Limitations with Concentration, Persistence, or Pace

Plaintiff argues the ALJ erred by failing to account for her step-three

---

1 An SVP of 1-2 corresponds to unskilled work, an SVP of 3-4 corresponds to semi-skilled work, and an SVP of 5-9 corresponds to skilled work. SSR 00-4p.

findings of moderate limitations with concentration, persistence, or pace in the residual functional capacity assessment. As discussed above, as part of her step-three analysis the ALJ found that Plaintiff did not satisfy the paragraph B criteria of Listing 12.02 because she had only moderate limitations in concentrating, persisting, or maintaining pace. (Doc. 28, at 23).

In the residual functional capacity assessment, the ALJ restricted Plaintiff from work with "noise levels greater than 3 out of 5 as described the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations." (Doc. 28 at 24). The Selected Characteristics of Occupations describes noise level of 3 as "moderate" level noise, such as a "business office where typewriters are used; department store; grocery store; light traffic; fast food restaurant at off-hours." SCODICOT, App. D, Environmental Conditions. Plaintiff argues the ALJ's noise level restriction did not adequately account for the moderate limitations in concentration, persistence, and pace identified by the ALJ at step three in her discussion of the medical opinion evidence.

Plaintiff maintains the ALJ's failure to adequately account for these limitations cannot be considered harmless because the ALJ found Plaintiff capable of returning to her past relevant work as an eligibility worker, which is considered a skilled position. Plaintiff notes that the vocational expert testified that an

23

individual limited to unskilled work would not be capable of performing Plaintiff's past work or the alternative semi-skilled jobs identified by the ALJ at step five. Because the ALJ did not adequately account for Plaintiff's mental limitations, Plaintiff contends, remand is required to further develop the record as to the impact of any additional limitations on Plaintiff's ability to work.

To the extent Plaintiff argues the ALJ was necessarily required to include moderate limitations with concentration, persistence, or pace as part of the residual functional capacity determination, she is mistaken. Under Ninth Circuit caselaw, the ALJ is not required to include in the residual functional capacity assessment any limitations she finds at Steps 2 and 3. See e.g. *Bray*, 554 F.3d at 118-29. The limitations identified in step 3 are not a residual functional capacity assessment, but "are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Social Security Ruling 96-8p, 1996 WL 374184, at *4.

As discussed above, however, Dr. Campion opined that Plaintiff had moderate limitations in concentration, persistence, and pace. Also as discussed above, the ALJ failed to address Dr. Campion's opinion, and the Court finds the ALJ's failure to do so was not harmless error. Accordingly, whether the ALJ accurately assessed Plaintiff's limitations in concentration, persistence, and pace,

and whether she adequately accommodated for those limitations in the residual functional capacity assessment is not clear. These issues are better addressed on remand.

### D.      Remand or Reversal for Benefits

The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, Plaintiff does not argue that remand for an award of benefits is proper, and instead asks the Court to remand this matter for further administrative proceedings. Because there are outstanding issues to be resolved with respect to Plaintiff's mental limitations, the Court agrees that remand for further proceedings is appropriate. On remand, the ALJ shall evaluate Dr. Campion's opinion and consider whether those limitations are properly incorporated into the residual functional capacity assessment, and elicit additional vocational expert testimony as necessary.

25

## IV.   **Conclusion**

For the reasons discussed above, the Commissioner's decision denying Plaintiff's claims for disability insurance benefits is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 6th day of April, 2021.

_____
Kathleen L. DeSoto
United States Magistrate Judge

26